IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAMAR SOWELL,

*Plaintiff,*

v.

RAV INVESTIGATIVE & SECURITY
SERVICES, LTD, et al.,

*Defendants.*

CIVIL ACTION
NO. 15-03657

PAPPERT, J.                                                          MAY 26, 2016

## MEMORANDUM

Lamar Sowell ("Sowell") sued RAV Investigative & Security Services, LTD ("RAV") and Sonesta International Hotels Corporation ("Sonesta"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). RAV failed to appear or otherwise respond to his complaint and Sowell now moves for entry of a default judgment against RAV pursuant to Federal Rule of Civil Procedure 55. The Court grants the motion.

## I.

RAV is a business that provides security services and personnel to a variety of clients throughout the country. (Compl. ¶ 8, ECF No. 1.) Sowell worked at RAV for approximately a year and a half before his termination in March 2014. (*Id.* ¶ 17.) RAV assigned Sowell to work at Sonesta as a security guard. (*Id.* ¶ 18.) Sowell wore "traditional Muslim garb to the worksite," but would change into his security uniform before beginning his shift. (*Id.* ¶ 20.) He alleges that RAV management told him "that he should not wear his Muslim garb when reporting to work." (*Id.* ¶ 21.) Sowell responded that the clothes he wore to work were part of his religion. (*Id.* ¶ 22.)

1

On March 18, 2014, after Sowell had been working for several hours, his supervisor Jim Toban asked him "Why the fuck [did he wear his] Muslim garb" to work.  (*Id.* ¶ 24.)  Shortly after that Toban told Sowell to leave work, stating that Sonesta requested he be sent home.  (*Id.* ¶ 25.)  Toban told Sowell that his "traditional Muslim dress was unprofessional, berated [him] for wearing it, and told [him] that he was terminated."  (*Id.* ¶ 26.)  After Sowell subsequently sought to return to work, RAV management confirmed that he was fired.  (*Id.* ¶ 27.)  Sowell alleges that he was terminated "because of his religion, his request for a religious accommodation, and/or for expressing opposition to discriminatory treatment" in violation of Title VII and the PHRA.  (*Id.* ¶¶ 29, 31–37.)

Sowell filed his complaint on June 30, 2015.  (ECF No. 1.)  He attempted to serve RAV via a waiver of service, but RAV did not sign and return the waiver or otherwise appear.  (Pl.'s Mot. to Enter Default J. ("Pl.'s Mot.") ¶¶ 1–2, Ex. A, ECF No. 17.)  On August 18, 2015, Sowell personally served one of RAV's officers with a copy of the summons and complaint.[1]  (*Id.*, Ex. B.)  After RAV failed to appear or respond to the complaint, Sowell's counsel sent an October 5, 2015 letter to RAV's legal department stating that he would file a motion for default judgment if a representative from RAV did not contact him by October 12, 2015.  (*Id.*, Ex. C.)  RAV did not respond to the letter and Sowell requested the clerk of court to enter default pursuant to Rule 55(a).  (ECF No. 13.)  The clerk entered default against RAV on October 15, 2015.  (ECF No. 14.)  Sowell then filed his motion for default judgment on December 1, 2015.  (ECF No. 17.)  RAV has not appeared, responded to the complaint or opposed Sowell's motion for default judgment.  (Pl.'s Mot. ¶ 5.)

---

[1]       Unlike RAV, on August 6, 2015 Sonesta executed and returned a Waiver of Service to Sowell.  (ECF No. 4.)  Sonesta timely answered the complaint and has since participated in the litigation.  (ECF No. 8.)

## II.

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal quotation marks omitted). The court need not, however, accept the moving party's legal conclusions or allegations relating to the amount of damages. *Id.*; *see also Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kaneet, *Federal Practice and Procedure* § 2688, at 58–59, 63 (3d ed. 1998)). Consequently, before granting a default judgment the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."[2] *Asher*, 2006 WL 680533, at *1 (citing Wright, § 2688, at 63).

### A.

Sowell alleges that RAV violated his rights under Title VII and the PHRA. Courts interpret those statutes identically and construe the protections they provide interchangeably. *See Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 111 (3d Cir. 2012) (quoting *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002)).

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e–

---

[2]     "[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citations and internal quotation marks omitted). Sowell has adequately pled both jurisdiction and venue. (Compl. ¶¶ 2–4.) He has also pled that he exhausted his administrative remedies and initiated this lawsuit "within ninety [ ] days of receiving a right-to-sue letter from the EEOC and after one [ ] year of his original filing with the PHRC." (*Id.* ¶ 5.)

2(a).  This provision forbids employers from discriminating against an employee because of his religion.  *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, ––– U.S. –––, 135 S.Ct. 2028, 2032 (2015).

Title VII defines "religion" to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [ ] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  "In the Third Circuit, employees may rely on two different theories to establish a claim for religious discrimination: 'disparate treatment' on account of religion, or 'failure to accommodate' religious beliefs."  *Wallace v. City of Phila.*, No. 06-4236, 2010 WL 1730850, at *6 (E.D.Pa. Apr. 26, 2010) (quoting *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 281 (3d Cir. 2001)).  An employee may also claim that his employer retaliated against him for opposing an employment practice that he reasonably believed to be unlawful under Title VII.  42 U.S.C. § 2000e–3(a) (defining "unlawful employment practice" to include discrimination against an individual "because he has opposed any practice [that the employer has] made an unlawful employment practice by this subchapter, or because he has" complained of discrimination).

To establish a prima facie case of religious discrimination, a plaintiff must demonstrate that: (1) he held a sincere religious belief that conflicts with a job requirement; (2) he informed his employer of the conflict; and (3) he was disciplined for failing to comply with the conflicting requirement."  *Shelton v. Univ. of Medicine & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000).  Once a plaintiff has established a prima facie case, the burden then shifts to the employer to show either that "it made good faith efforts to accommodate, or that the requested accommodation would work an undue hardship."  *Id.* (citations and internal quotation marks

Case 2:15-cv-03657-GJP   Document 29   Filed 05/26/16   Page 5 of 13

omitted). If the employer satisfies its relatively low burden, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the employer's articulated reasons were a pretext for discrimination. *See Schwartzberg v. Mellon Bank, N.A.*, No. 06-1006, 2008 WL 111984, at *8 (W.D. Pa. Jan. 8, 2008), *aff'd*, 307 F. App'x 676 (3d Cir. 2009) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992)).

Sowell's complaint alleges facts sufficient to establish that RAV discriminated against him because of his religious beliefs and failed to accommodate his religious beliefs in violation of Title VII and the PHRA. Sowell alleges that he held a sincere religious belief at odds with RAV's policies regarding the clothes he was permitted to wear to work, that he informed RAV of the conflict and was then terminated for failing to comply with RAV's request not to wear his religious garb. (Compl. ¶¶ 15–30.) The entry of default against RAV requires the Court to accept as true the complaint's allegations and the Court has no basis to assess whether RAV made good faith efforts to accommodate Sowell's request to wear his religious clothing into work or that an accommodation to Sowell's request presented an undue hardship for RAV.

Sowell also has alleged facts sufficient to demonstrate discriminatory retaliation. "A prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). Specifically, Title VII protects "those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (citation omitted).

Sowell alleges that after RAV management told him not to wear "his Muslim garb when reporting to work," he "explained that his manner of dress was part of his religion and . . . he would continue to wear his Muslim garb on his way to work."  (Compl. ¶ 22.)  He further alleges that he "was terminated in extremely close temporal proximity to requesting the ability to wear Muslim garb before his shift and being told that he was not permitted to do so."  (*Id.* ¶ 28.) These allegations are sufficient to satisfy the Court that Sowell has "a legitimate cause of action" for Title VII retaliation.  *Asher*, 2006 WL 680533, at *1 (citing Wright, § 2688, at 63).

## B.

Rule 55(b)(2) authorizes a district court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.  *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).  "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Sowell has demonstrated that he personally served the summons and complaint upon a representative of RAV and RAV has failed to answer or otherwise respond.  (Pl.'s Mot., Ex. B.) The three *Chamberlain* factors also weigh in favor of granting the motion for default judgment. First, denying the motion will prejudice Sowell because he has "no other means of vindicating [his] claim[s] against" RAV.  *Asher*, 2006 WL 680533, *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default").  Further, "[c]onsiderable delays," especially those that might "stretch on indefinitely," are sufficient to show prejudice to the

6

plaintiff.  *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12,

2013) (citation omitted); *see also State Farm Fire & Cas. Co. v. Hunt*, No. 14-06673, 2015 WL

1974772, at *4 (E.D. Pa. May 4, 2015) (holding that plaintiff "is prejudiced by [defendants']

ignoring this litigation, protracting the dispute between the parties and effectively foreclosing

[plaintiff] from relief for the foreseeable future").

Second, "the court may presume that an absent defendant who has failed to answer has no

meritorious defense, because [i]t is not the court's responsibility to research the law and

construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d

261, 271–72 (E.D. Pa. 2014) (internal citations and quotation marks omitted).  Third, RAV's

failure to "engage[ ] in the litigation process" constitutes "culpable conduct with respect to the

entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the

recalcitrant or the oppositional and uncooperative."[3] *E. Elec. Corp. of N.J. v. Shoemaker Constr.

Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009).

### III.

After granting the motion for default judgment, the Court must address the amount of

damages to award.  *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa.

Sept. 2, 2015).  "Courts may rely upon detailed affidavits submitted by the parties instead of

holding an evidentiary hearing to determine damages on default judgment."  *J & J Sports Prods.,

Inc. v. Puentenueva*, No. 14-3226, 2014 WL 7330477, at *2 n.1 (E.D. Pa. Dec. 22, 2014)

(citation omitted).  On January 18, 2016, Sowell submitted a supplemental memorandum in

---

[3]     At least one court has held the third factor to be neutral where the court "has no information related to the
motivations" of the defendant "in failing to appear and defend."  *Great Am. E & S Ins. Co. v. John P. Cawley, Ltd.*,
866 F. Supp. 2d 437, 442 (E.D. Pa. 2011), *judgment entered sub nom. Great Am. E&S Ins. Co. v. Cawley*, No. 10-
4853, 2011 WL 2174975 (E.D. Pa. June 3, 2011).  Even if the third *Chamberlain* factor was "neutral," granting the
motion for default judgment would still be warranted because Sowell would otherwise be prejudiced and RAV does
not appear to have any litigable defense.

support of his damages request.  (Pl.'s Mem. in Supp. of Req. for Entry of J. ("Pl.'s Damages Mem."), ECF No. 18.)  He attached an affidavit providing, among other things, the amount he earned while employed at RAV and his subsequent work history, including information about his compensation.  (*Id.*, Ex. A.)

### A.

The award of equitable damages is within "the judgment of the court, which must exercise this power in light of the remedial purposes of Title VII."  *McKenna v. City of Phila.*, 636 F. Supp. 2d 446, 455 (E.D. Pa. 2009) (citation omitted).  When awarding equitable damages under Title VII, "district courts should endeavor to restore the employee to the economic status quo that would exist but for the employer's conduct."  *Id.* (citation omitted).

The equitable remedies available to a plaintiff in a Title VII or PHRA action include the award of back pay and front pay.  *See Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 440 (3d Cir. 2009); *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1119 (3d Cir. 1988).  An award of "back pay is designed to make victims of unlawful discrimination whole by restoring them to the position they would have been absent the discrimination."  *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 84 (3d Cir. 2009) (citation omitted).  The standard calculation for back pay is "to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained."  *McKenna*, 636 F. Supp. 2d at 456 (citation and internal quotation marks omitted).

The appropriate back pay period is from March 30, 2014, the date Sowell was formally terminated, through January 18, 2016, the date on which he filed his affidavit regarding damages. *See Johnson v. Dependability Co. L.L.C.*, No. 15-3355, 2016 WL 852038, at *4 (E.D. Pa. Mar. 3,

2016) ("The Court concludes that the appropriate end of the back pay period is the date of the damages hearing . . . .").

While at RAV, Sowell earned approximated $9 per hour, and worked approximately 40 hours per week for a total of approximately $360 per week.  (Pl.'s Damages Mem., Ex. A ¶ 8.) Accordingly, Sowell would have earned approximately $33,840 in the 94-week period between his termination and the date on which he filed his damages affidavit.  During that time, Sowell instead made approximately $12,226.[4]  The Court finds that he is therefore entitled to $21,614 in back pay.[5]  *See Rios*, 2015 WL 5161314, at *14–15 (calculating back pay in same manner).

## B.

Sowell also asks the Court for front pay in the amount of $1,040 per year for "as many years [ ] as it deems appropriate."  (Pl.'s Damages Mem. at 3.)  That number represents the difference between Sowell's current income and the amount he would have received had he continued to work at RAV.  (*See id.*, Ex. A ¶ 16.)

Front pay, an alternative to reinstatement, is a remedy that the "courts may award [ ] where a victim of employment discrimination will experience a loss of future earnings because []he cannot be placed in the position []he was unlawfully denied."  *Donlin*, 581 F.3d at 86

---

[4]    Sowell was employed sporadically between his termination from RAV and January 18, 2016.  (*See* Pl.'s Damages Mem., Ex. A. ¶¶ 9–14.)  Between July and September 2014, Sowell made approximately $3,505 working at the Holiday Inn Express ($389.50 per week for 9 weeks).  (*Id.*, Ex. A ¶ 10.)  He earned approximately $5,661 between May and September 2015 working at Walmart ($333 per week for 17 weeks).  (*Id.*, Ex. A ¶ 12.)  He made roughly $3,060 between November 2015 and the end of the back pay period ($340 per week for 9 weeks).  (*Id.*, Ex. A ¶ 14.)  At all other times between March 30, 2014 and January 18, 2016 Sowell was unemployed.  (*Id.*, Ex. A ¶¶ 9, 11, 13.)

[5]    Whether to award prejudgment interest is within the discretion of the Court.  *See Booker v. Taylor Milk co.*, 64 F.3d 860, 868 (3d Cir. 1995).  The Court declines to award prejudgment interest because Sowell "does not provide adequate support for prejudgment interest" regarding his back pay.  *E. Const. & Elec., Inc. v. Universe Techs., Inc.*, No. 10-1238, 2011 WL 53185, at *5 (D.N.J. Jan. 6, 2011).  Specifically, he "does not include a proposed prejudgment interest rate or any interest calculations."  *Id.*  The Court will allow Sowell ten days to make a submission calculating the specific amount of prejudgment interest.  *See id.* (allowing plaintiff leave to provide prejudgment interest calculations).

(citations omitted).  The award of front pay is discretionary.  *Id.* at 87 ("Because the award of

front pay is discretionary, we review the District Court's decision for abuse of discretion . . . .").

Front pay is awarded for a period of time to allow the defendant "to reestablish [his] rightful

place in the job market."  *Id.* (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 890 (3d Cir.

1984)).

The Court declines to award Sowell front pay.  Sowell was arrested on April 26, 2016 in

connection with a series of robberies and is currently incarcerated at the Federal Detention

Center ("FDC") Philadelphia.[6]  *See United States v. Sowell*, No. 16-cr-00512 (E.D. Pa. filed Apr.

25, 2016) (reflecting arrest of and charges against Sowell); (*see* Pl.'s Appl. for a Writ of Habeas

Corpus ad Testificandum ("Pl.'s Appl.") ¶ 4, Ex. A, ECF No. 27 (stating that Sowell is currently

incarcerated).)  Awarding front pay in a circumstance where plaintiff is incarcerated is

"inappropriate [because] it would catapult [him] into a better position than [he] would have

enjoyed in the absence of discrimination."  *McKenna*, 636 F. Supp. 2d at 466 (citations and

internal quotation marks omitted).  Even if Sowell was not currently incarcerated, however, he

found employment after his termination "in the job market roughly equal to where [he] would be

if [he] had stayed with [RAV]."  *Black v. Binding Specialties, Inc.*, No. 09-3670, 2012 WL

602766, at *1 n.1 (D.N.J. Feb. 23, 2012) (citation and internal quotation marks omitted).  Since

his termination, Sowell worked in a number of positions earning an hourly wage roughly equal

---

[6]      The Court takes judicial notice of Sowell's recent arrest and incarceration.  *See United States v. Sowell*, No.
16-cr-00512 (E.D. Pa. filed Apr. 26, 2016) (order regarding Bail Status reflecting that Sowell stipulated to pretrial
detention).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally
known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort
to sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201; *see United States v. Mitchell*, 365
F.3d 215, 252 (3d Cir. 2004) (discussing appropriateness of judicial notice).  On May 18, 2016 Sowell's counsel
filed an Application for a Writ of Habeas Corpus Ad Testificandum, stating that Sowell is currently incarcerated and
requesting the Court to issue an Order requiring the FDC Philadelphia to allow Sowell to appear at the trial in this
matter should the case proceed that far.  (Pl.'s Appl. at 3.)  Attached to the writ is a record from the Bureau of
Prisons indicating Sowell is currently incarcerated.  (*Id.*, Ex. A.)  Counsel also told the Court during a telephone
conference that Sowell is incarcerated at the FDC Philadelphia.  (ECF No. 25.)

to—and in some cases more than—what he was making at RAV.  The "rationale for an award of front pay is lacking" in such circumstances.  *Id.*

### C.

Sowell requests $50,000 in "emotional damages," claiming that "[a]s a result of being fired, [he] became depressed and anxious."  (Pl.'s Damages Mem., Ex. A ¶ 17.)  He stated that he worries that his future employers "will fire [him] if they find out [he is] Muslim[]" and that RAV "caused [him] a great deal of despair, embarrassment and sadness in that [he] was clearly fired due to [his] religious beliefs."  (*Id.*)

Title VII provides that a plaintiff may receive compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."  42 U.S.C. § 1981a(b)(3).  To recover compensatory damages in a Title VII action, a plaintiff must present evidence of actual injury.  *See, e.g.*, *Gunby*, 840 F.2d at 1121 (addressing damages pursuant to 42 U.S.C. § 1981a); *Young v. Pleasant Valley Sch. Dist.*, No. 07-00854, 2012 WL 1827194, at *20 (M.D. Pa. May 18, 2012), *aff'd*, 601 F. App'x 132 (3d Cir. 2015) ("[T]o the extent Plaintiff may recover compensatory damages against Defendant . . . she is only entitled to compensatory damages that have been linked to an actual injury").  Neither medical evidence nor corroborating testimony, however, is required to prove injury.  *See Standen v. Gertrude Hawk Chocolates, Inc.*, No. 11-1988, 2014 WL 1095129, at *3 (M.D. Pa. Mar. 19, 2014) (citation omitted).  Ultimately, "[t]here must be a rational relationship between the specific injury sustained and the amount awarded."  *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987).

The Court finds that there is sufficient evidence to award $2,500 in compensatory damages.  *See, e.g.*, *Rios*, 2015 WL 5161314, at *16 (awarding $10,000 in compensatory

damages after plaintiff requested $100,000 and granting default judgment where plaintiff alleged discrimination and retaliation claims under Title VII and PHRA against former employer); *Thompson v. Cent. Sec. Agency, Inc.*, No. 98-2474, 1999 WL 126918, at *3 (E.D. Pa. Mar. 8, 1999) (awarding $10,000 in compensatory damages in default judgment award where plaintiff testified to feeling "scared" and "embarrassed" as a result of losing her job due to sex discrimination); *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 153 (E.D.N.Y. 2013) (explaining that "[f]or typical or garden-variety emotional distress claims, district courts have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's vague or conclusory testimony of distress[]").  The cases on which Sowell relies for a larger reward are cases involving lengthy testimony from multiple witnesses at trial and ample evidence regarding the plaintiff's emotional distress.  *See, e.g.*, *Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130, 137 (3d Cir. 2007) (upholding award of $200,000 in compensatory damages where testimony included, among other things, victim's wife's statement at trial that after his termination the victim lost weight, became depressed, had trouble sleeping, "was just nuts," "wasn't the same" and that "his sense of self worth disappeared").  Such evidence of emotional distress is not present here.

### D.

Sowell requests that the Court award him $100,000 in punitive damages.  (Pl.'s Damages Mem., Ex. A ¶ 18.)  Punitive damages are available under Title VII only "if the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging

in discrimination." *Kant v. Seton Hall Univ.*, Nos. 06-4448, 06-4464, 2008 WL 2212006, at *5 (3d Cir. 2008) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)).

The allegations in the complaint demonstrate that Jim Toban, a RAV supervisor, acted with malice or reckless indifference to Sowell's rights under Title VII when he confronted him for wearing "Muslim garb to work," dismissed him from work and subsequently confirmed via text message that Sowell was terminated.  (Pl.'s Damages Mem., Ex. A ¶¶ 4–7.)  The Court concludes that Sowell is entitled to $5,000 in punitive damages.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (stating that punitive damages must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered[]"); *Edwards-DiPasquale v. Wilfran Agric. Indus., Inc.*, No.  00-3818, 2001 WL 1632122, at *7 (E.D. Pa. Dec. 17, 2001) (granting default judgment in favor of plaintiff alleging violations of Title VII and PHRA and awarding $10,000 in punitive damages because defendants "discriminated against [plaintiff] with malice or reckless indifference to her federally protected rights").

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
